22-307-pr (L)
*Moco v. Janik, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12ᵗʰ day of October, two thousand twenty-three.

PRESENT:
> JOSEPH F. BIANCO,
> SARAH A. L. MERRIAM,
> MARIA ARAÚJO KAHN,
> > *Circuit Judges*.

_____

Robert Moco,

> > *Plaintiff- Appellant*,                    22-307-pr (L); 22-348-pr (Con)

> > v.

J.M. Janik, Corrections Officer, Philip Voltz,

> > *Defendants-Appellees*,*

New York State Department of Corrections,
New York Department of Corrects Medical (Gowanda),

> > *Defendants*.

_____

FOR PLAINTIFF-APPELLANT:                    BRIAN MARC FELDMAN (Franco A. Mirolo, *on the brief*), Harter Secrest & Emery LLP, Rochester, NY.

---

* The Clerk of the Court is respectfully directed to amend the caption as set forth herein.

FOR DEFENDANTS-APPELLEES:                    SEAN P. MIX, Assistant Solicitor General of Counsel (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General State of New York, Albany, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Geraci, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff Robert Moco ("Moco") appeals from the district court judgment entered January 27, 2022, (1) dismissing for failure to state a claim his Eighth Amendment claim alleging excessively tight handcuffs, and (2) granting summary judgment in favor of defendants on the remaining claims for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). At all relevant times, Moco was incarcerated and in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Moco brought several Eighth Amendment claims pursuant to 42 U.S.C. § 1983 alleging the use of excessive force and denial of medical care by DOCCS officials at the Gowanda Correctional Facility ("Gowanda") on January 27 and 30, 2016. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we reference only as necessary to explain our decision.

We review *de novo* both a district court's determination regarding exhaustion of administrative remedies under the PLRA, *Williams v. Priatno*, 829 F.3d 118, 121–22 (2d Cir. 2016), and grant of summary judgment, *Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013). "Summary judgment is proper only when, construing the evidence in the light most favorable to

2

the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

The PLRA provides: "No action shall be brought with respect to prison conditions under [42 U.S.C.] section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). The PLRA requires "proper exhaustion," meaning exhaustion in "compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). For prisoners confined by DOCCS, the relevant administrative remedy is the Inmate Grievance Program ("IGP"). *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5; *Williams*, 829 F.3d at 119.

As an inmate within DOCCS, Moco was required to submit his grievance through the IGP. Moco does not dispute that a grievance process existed at Gowanda, that Gowanda staff gave him written materials explaining the IGP when he arrived in 2016, and that he did not comply with those procedures. Instead, Moco contends that the grievance process was not available to him at the time of the incidents because his ability to read English was "extremely limited." Joint App'x at 447. Moco was born and raised in Albania, and prior to moving to the United States in 2001, spoke only Albanian. Although Moco acknowledged that he understood that the written materials supplied to him by Gowanda staff "provided certain guidance" regarding the grievance process, he asserted that he was "generally unaware of the specific procedures" due to his "limited grasp of

3

the English language" and "relied on library staff for assistance." *Id.* at 447–48. Thus, Moco argues that the district court erred in granting summary judgment on the basis of exhaustion because he created "a genuine issue as to his inability to comprehend the grievance process in January 2016[.]" Appellant's Br. at 20. We disagree.

A grievance process is available if an incarcerated person can use it to obtain the relief he or she seeks. *See Ross v. Blake,* 578 U.S. 632, 643 (2016). "We have held that the test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 311–12 (2d Cir. 2020) (alteration adopted) (internal quotation marks and citations omitted). The Supreme Court has recognized three non-exclusive circumstances in which a grievance process may not be available for purposes of the PLRA and a court may excuse a failure to exhaust: (1) when the grievance process is a "simple dead end" because officers are "unable or consistently unwilling to provide" relief; (2) when the administrative scheme is "so opaque that it [is], practically speaking, incapable of use"; and (3) when "prison administrators thwart inmates" seeking relief by means of "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44. "Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (alteration adopted) (internal quotation marks and citations omitted). "If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact." *Id*. As set

forth below, we agree with the district court that there is no genuine issue of material fact as to whether the grievance process was rendered unavailable to Moco, for purposes of the PLRA, due to his alleged lack of proficiency in the English language.

In granting summary judgment for the defendants, the district court correctly concluded that the uncontroverted evidence in the record demonstrated that, from the perspective of the prison officials, "[b]y all appearances, Moco could speak and understand English in a manner sufficient to understand the written grievance-procedure materials, to make requests, and to protect his rights." *Moco v. Janik*, No. 17-CV-398, 2021 WL 5309744, at *4 (W.D.N.Y. Nov. 15, 2021). That uncontroverted evidence included the following: (1) Moco entered DOCCS custody in November 2015, at which time DOCCS officials noted on intake forms that Moco spoke and understood English; (2) during his intake interview, which was conducted in English, Moco expressed interest in obtaining a G.E.D. and pursuing a vocational trade; (3) between December 2015 and September 2021, while at Gowanda, Moco met with more than one "Offender Rehabilitation Coordinator"[1] ("ORC"), conversed in English, and never requested a translator to participate in these meetings or to communicate with DOCCS staff; and (4) at his first meeting with an ORC, Moco "asked . . . how to get court papers concerning his criminal offense" and discussed other issues, including "inmate programming, an active order of protection, his parole board and release dates, and emergency contact information." Joint App'x 511–12. As the district court noted, faced with this uncontroverted evidence, Moco did not "marshal any evidence that Gowanda officials were or should have been aware of his difficulties with the English language, such that they should have translated the grievance procedures into Albanian even without a

---

[1] Offender Rehabilitation Coordinators "work[] with inmates on their rehabilitation and meet[] with them to discuss and address any complaints and/or concerns they might have." Joint App'x at 511 ¶ 3.

5

request." *Moco*, 2021 WL 5309744, at \*4.

Thus, the situation here is clearly distinguishable from the circumstances in *Ramirez v. Young*, 906 F.3d 530 (7th Cir. 2018), upon which Moco heavily relies to support his argument. In *Ramirez*, there was evidence that "[the plaintiff's] language barrier was not a secret to the prison"; indeed, "[t]he prison officials knew—and recorded their awareness—of his inability to understand[.]" *Id*. at 538. The record in *Ramirez* also contained evidence that "the prison itself prevented a friendly fellow prisoner from quietly translating the prison orientation for him." *Id*. at 537. Under those circumstances, the Seventh Circuit determined that the remedies were rendered unavailable to the plaintiff and excused his failure to exhaust under the PLRA. *Id*. at 538. In reaching this decision, the court emphasized that it was "not holding that a prisoner's subjective unawareness of a grievance procedure excuses his non-compliance[,]" but rather that the prison had not taken the "required reasonable steps" to inform him of the grievance procedures. *Id*.

Moco's reliance on the Sixth Circuit's unpublished decision in *Reyes-Martinez v. Woosley*, No. 21-5125, 2021 U.S. App. LEXIS 26203 (6th Cir. Aug. 30, 2021), is similarly misplaced. In *Reyes-Martinez*, the court held that the district court erred in granting summary judgment on the exhaustion issue where, *inter alia*, there was evidence that: (1) the plaintiff informed the prison of his limited English-language skills upon his arrival at the facility; (2) he never received a Spanish-language version of the handbook containing the procedure; and (3) once he learned of the grievance procedures, the prison disregarded his requests for certain information necessary to file the grievance and "separated him from [an] inmate who was assisting him with the grievances (which were all filed using an English-language form) in order to prevent Reyes-Martinez from pursuing his grievances." *Id*. at \*7; *see also id.* at \*5–7

Here, in contrast to *Ramirez* and *Reyes-Martinez*, there is no evidence in the record that prison officials were aware that Moco could not understand the grievance procedure due to a language barrier, or that they thwarted his compliance with the grievance procedures in any way. Moreover, unlike in *Ramirez* where the "record shows that nothing gave [the plaintiff] even a clue about the grievance process," 906 F.3d at 537, Moco's own sworn statement admits that he had understood that the prison had provided him with written "guidance" regarding grievance procedures.[2] Notwithstanding his general understanding of the existence of a grievance procedure, Moco never sought a translation of the grievance procedure from DOCCS staff or any clarification as to what the procedure required until months after the alleged incidents. By that point, the time allowed under the IGP to file a grievance related to the incidents had already expired.[3]

Although Moco suggests that the district court improperly made factual findings regarding his level of proficiency in the English language, the district court made no such findings. Instead, the district court correctly determined that the uncontroverted facts in the record demonstrated that any language deficiencies did not render the grievance process unavailable to Moco for purposes of the PLRA. Moco proffered no evidence that Gowanda personnel had reason to know about his

---

[2] The district court also noted: "Within two months after the January 2016 incidents, Moco was able to write two coherent letters in English to DOCCS staff about the incidents." *Moco,* 2021 WL 5309744 at *4. Moco suggests that the district court should not have relied upon those letters with respect to his English-language skills because "there was no evidence in the record as to whether [he] wrote that letter himself or to the extent to which his English had improved over time." Appellant's Br. at 21. However, any factual dispute regarding whether Moco wrote those letters is immaterial to the summary judgment determination. The other uncontroverted evidence in the record is sufficient to demonstrate that the grievance procedure was not rendered unavailable to him due to any limitations on his English-language skills.

[3] A grievance generally must be filed within 21 days of the incident giving rise to the complaint. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)(1). However, the regulations provide that a grievance program supervisor may allow a complaint more than 21 days after the date of the incident, but the supervisor may not grant an exception "if the request was made more than 45 days after an alleged occurrence." *Id*. § 701.6(g)(1)(i)(a).

alleged inability to read or understand the grievance procedure materials or that they thwarted his ability to utilize the grievance procedure in any way. Nor did Moco set forth evidence that the procedure was "so opaque that it [became], practically speaking, incapable of use" due to his limited English-language skills or for any other reason. *Ross*, 578 U.S. at 643.

Accordingly, Moco's failure to exhaust available administrative remedies under the PLRA is not excused, and summary judgment was warranted in favor of defendants on all claims. Because we conclude that summary judgment was warranted for failure to exhaust administrative remedies on all claims related to the events on the two dates at issue, including the handcuffing claim, we need not address the district court's dismissal of the handcuffing claim under Rule 12(b)(6) for failure to allege a sufficient injury. *See Nat'l R.R. Passenger Corp. v. McDonald*, 779 F.3d 97, 100 (2d Cir. 2015) ("We may affirm on any ground with support in the record.").

\* \* \*

We have considered Moco's remaining arguments and conclude that they are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8